The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.



Mary Ann Whipple
United States Bankruptcy Judge

Dated: March 9 2015

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 14-32432 |
| | ) | |
| Paul Wenzel, Jr., | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | ) | JUDGE MARY ANN WHIPPLE |

### MEMORANDUM OF DECISION AND ORDER

This matter comes before the court upon the Amended Motion of the United States Trustee to Dismiss for Abuse Pursuant to 11 U.S.C. § 707(b)(1), (b)(2), & (b)(3), ("Motion to Dismiss") [Doc.# 15]. A hearing was held that Debtor, his counsel and counsel for the United States Trustee ("UST") attended in person and at which the parties had the opportunity to present testimony and evidence in support of their positions.

The district court has jurisdiction over this Chapter 7 case pursuant to 28 U.S.C. § 1334(a) as a case under Title 11. It has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 2012-7 of the United States District Court for the Northen District of Ohio. Proceedings to determine a motion to dismiss a case under § 707(b) are core proceedings that the court may hear and decide. 28 U.S.C. § 157(b)(1) and (b)(2)(A).

Having considered the arguments of counsel as well as testimony and evidence offered by the parties, for the reasons that follow, the court will grant the Motion to Dismiss Debtor's Chapter 7 case unless he converts the case to Chapter 13.

## **BACKGROUND**

Debtor is single with no dependents and is employed as a project manager at Tanner Supply Company, where he has worked for nineteen years. He filed his Chapter 7 petition on July 1, 2014. Debtor's petition states that his debts are primarily consumer debts. His bankruptcy Schedule I shows gross monthly income of $3,937.51 and total monthly income after payroll deductions in the amount of $2,846.55. [UST Ex. 2, pp. 20-21]. His Schedule J shows total monthly expenses in the amount of $2,745.00, with a resulting budget excess of $101.55. [*Id.* at 23]. Debtor also receives a monthly check from his employer in the amount of $400.00 as a gasoline allowance, as he is required to travel to locations in Ohio and eastern Michigan two or three times per week. The gasoline allowance is not included in the total monthly income shown on Schedule I, and Debtor included no transportation expense on Schedule J. He testified that his gas expense is sometimes less and sometime more than the $400.00 he receives.

As required under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Debtor also completed and filed with his petition Official Form B22A, Statement of Current Monthly Income and Means Test Calculation. [UST Ex. 3].[1] In Parts II through IV of Form B22A, he reports total current monthly income ("CMI"), as that term is defined in 11 U.S.C. § 101(10A), in the amount of $3,937.51. On an annualized basis, Debtor's CMI as reported on his Form B22A is $47,250.12, which is above the median family income for a family of one in Ohio. [*Id.*]. His CMI calculation does not include the $400.00 monthly check he receives as a gas allowance. Nor does it include any bonus received by him. Debtor testified that a bonus is paid to him by his employer in April, depending upon how well the company has performed that year, and that he received a bonus in mid-April 2014 in the amount of $3,200.00. An annual bonus is not guaranteed, however, and Debtor has received no more than five bonuses in the past nineteen years.

Part V of Debtor's means test calculation includes deductions for expenses totaling $4,011.22. [*Id.* at 6]. Debtor's monthly disposable income on line 50 in Part VI is thus shown as a negative $73.71

---

[1]Effective December 1, 2014, Official Form B22A was changed. For cases filed on or after December 1, 2014, the Chapter 7 means test calculation would be set forth on new Official Forms B22A-1, B22A-1Supp, and B22A-2. Debtor's means test calculation is presented on Official Form B22A as in effect when he filed his petition. Fed. R. Bankr. P. 9009. Use of the new Chapter 7 means test forms would not change the outcome of the Motion to Dismiss. *Id.* ("The forms shall be construed to be consistent with these rules and the Code.").

2

($3,937.51 minus $4,011.22), and he indicates that a presumption of abuse does not arise under § 707(b)(2). [*Id.* at 1,7].

The UST disagrees and argues that Debtor's means test contains several errors. Specifically, the UST contends that Debtor's CMI is understated due to Debtor improperly excluding from his CMI calculation the monthly gas allowance that he receives and the $3,200 bonus. In addition, bankruptcy analyst Catherine Lowman testified that Debtor is entitled to an internet expense deduction of $40 on line 32 and charitable contribution deduction of $50 on line 40. According to the UST, if properly calculated with these modifications, the means test shows that there is a presumption of abuse.

Although the UST also argues under § 707(b)(3) that the totality of the circumstances of Debtor's financial situation demonstrates abuse, because the court agrees that a presumption of abuse arises in this case, it does not address the § 707(b)(3) argument.

## LAW AND ANALYSIS

Where debts are primarily consumer debts, as in this case, the court may, after notice and a hearing, dismiss a Chapter 7 case "if it finds that the granting of relief would be an abuse of the provisions of [Chapter 7]." 11 U.S.C. § 707(b)(1). Under § 707(b)(2) and (3), Congress provided two methods by which abuse may be proven. Section 707(b)(2)(A) sets forth an extensive "means test" calculation to determine whether there is a presumption of abuse. That section provides, in relevant part, as follows:

> [T]he court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of –
>     (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $7,475, whichever is greater; or
>     (II) $12,475.

11 U.S.C. § 707(b)(2)(A)(i).

The means test calculation thus requires a debtor to subtract certain allowed deductions from the debtor's current monthly income. Current monthly income ("CMI") is defined as "the average monthly income from all sources that the debtor receives. . .without regard to whether such income is taxable income, derived during the 6-month period ending on – (i) the last day of the calender month immediately preceding the date of the commencement of the case. . . ." 11 U.S.C. § 101(10A)(A). Specifically included in CMI is "any amount paid by any entity other than the debtor. . .on a regular basis for the household expenses of the debtor." 11 U.S.C. § 101(10A)(B). Where the means test calculation results in sufficient disposable income such that a presumption of an abusive filing arises under the statute, a debtor may rebut that

3

presumption only by demonstrating "special circumstances" as set forth in § 707(b)(2)(B).

At issue here is whether Debtor's CMI calculation must include the $400 he receives as a monthly gas allowance and/or the $3,200.00 bonus he received during the relevant six month period before filing his petition. The UST asserts that both the $400.00 monthly gas allowance and the six month average of the $3,200.00 bonus, or $533.33, must be included in Debtor's CMI and that inclusion of either results in a means test calculation showing sufficient income such that a presumption of abuse arises. For the following reasons, the court agrees that a presumption of abuse arises in this case.

With respect to the $400.00 gas allowance, the court agrees that the entire amount must be included in Debtor's CMI. He is paid this amount on a monthly basis. Although it is designated as a gas allowance, it is not based upon any actual gas expense incurred, and Debtor is able to use the $400.00 in any manner he chooses. While not a perfect fit, in the court's view, an amount received by a debtor on a regular basis that can be used by him however he chooses falls within the statute's definition of CMI.

Debtor argues, however, that if the gas allowance is included in his means test calculation, then he should also be permitted to deduct an additional gas expense from CMI. The means test calculation under § 707(b)(2) includes a monthly local standard vehicle operation expense in the amount of $212.00, which amount includes a debtor's gas expense and is included as a deduction on line 22A of Debtor's Form B22A. The statutory calculation provides for no additional gas expense deduction. Nevertheless, even if an additional deduction is proper, the deduction would be limited to $188.00, the difference between the $400.00 gas allowance and the $212.00 vehicle operation expense. Debtor reports on his Schedule J no transportation expense in excess of the $400.00.[2] As discussed below, a presumption of abuse arises even with an additional $188.00 deduction.

The court also agrees that the $3,200.00 bonus received by Debtor must be included in his CMI calculation. The fact that a bonus is discretionary and may not be received in coming years, as argued by Debtor, is no basis for excluding such income from the Chapter 7 CMI calculation. *In re Taborski*, No. 12-23966-CMB, 2013 WL 211116, *3, 2013 Bankr. LEXIS 214, *8 (Bankr. W.D. Pa. Jan. 18, 2013) (finding no basis for excluding a bonus payment simply because it is discretionary and entirely dependent upon debtor's employer); *In re Leggett*, No. 10-03383-8-RDD, 2011 WL 802806, *3-4, 2011 Bankr. LEXIS 820, *8-10 Bankr. E.D.N.C. Mar. 2, 2011) (rejecting the debtor's argument that additional income received

---

[2] Debtor included no transportation expense on Schedule J, presumably because he receives the $400.00 gas allowance that was not included in his income reported on Schedule I.

4

during the six-month look-back period should be excluded from the CMI calculation because the opportunities to earn such income no longer existed).

Nevertheless, courts differ in their interpretation of § 101(10A) and differ as to whether income received must also be earned or derived from services performed during the six-month look-back period. Some courts interpret the statute to include in the definition of CMI all income received during the look-back period, regardless of when it was earned. *See Miller v. United States Trustee (In re Miller)*, 519 B.R. 819, 823 (B.A.P. 10th Cir. 2014); *In re Katz*, 451 B.R. 512, 516 (Bankr. C.D. Cal. 2011); *In re Burrell*, 399 B.R. 620, 627 (Bankr. C.D. Ill. 2008). Under this interpretation, the $3,200.00 bonus would be averaged or prorated over the six-month look-back period, resulting in $533.33 being included in Debtor's CMI, as asserted by the UST. Other courts interpret § 101(10A) to require that income be both received and earned during the look-back period to fall within the definition of CMI. *See In re Arnoux*, 442 B.R. 769, 776 (Bankr. E.D. Wash. 2010); *In re Meade*, 420 B.R. 291, 305-06 (Bankr. W.D. Va. 2009). Under this interpretation, the $3,200.00 bonus would arguably be prorated over an entire year, resulting in only $266.66 being included in Debtor's CMI. However, the court need not decide which interpretation is correct since, as discussed below, inclusion of even the lesser amount results in a presumption of an abusive filing in this case.

Debtor's CMI, as reported on his Form B22A, is $3,937.51. [UST Ex. 3, pp. 3,6]. Adjusted to include his $400.00 monthly gas allowance and only $266.66 of his annual bonus results in a CMI of $4,604.17. Debtor's total deductions for expenses reported on his Form B22A is $4,011.22. [*Id.* at 6]. However, the court credits Lowman's testimony that Debtor is also entitled to an internet expense deduction of $40 on line 32 and charitable contribution deduction of $50 on line 40. With these adjustments, Debtor's deductions total $4,101.22. And assuming without deciding that a deduction for an additional gas expense of $188.00 is proper, Debtor's deductions would total $4,289.22. This amount subtracted from Debtor's adjusted CMI, results in monthly disposable income of $314.95 or $18,897.00 over a sixty-month period. Thus, a presumption of abuse arises under § 707(b)(2)(A),[3] and Debtor has demonstrated no special

---

[3] As set forth above, the $18,877.00 amount (for line 51 of the means test form) is measured against the lesser of the amount calculated under § 707(b)(2)(A)(i)(I) and $12,475 as set forth in § 707(b)(2)(A)(i)(II). Under § 707(b)(2)(A)(i)(I), the relevant calculation is the greater of $7,475 or 25% of debtor's nonpriority unsecured claims in the case, which his Schedule F, [UST Ex. 3, p. 17], shows as $27,296.57, with 25% of that amount being $6,824.14 (for line 54 of the means test form). The greater of the two amounts under § 707(b)(2)(A)(i)(I) is thus the $7,475 amount in the statute. As between $7,475 under § 707(b)(2)(A)(i)(I) and $12,475 set forth in § 707(b)(2)(A)(i)(II), $7,475 is the lesser amount. The court's revised 60 month CMI calculation of $18,897.00 is not less than $7,475; hence, the statutory presumption arises.

circumstances rebutting that presumption.

**THEREFORE**, based on the foregoing reasons and authorities, good cause appearing,

**IT IS ORDERED** that Debtor is allowed thirty (30) days from the date of this order to file a motion to convert to a Chapter 13 case, absent which the United States Trustee's Motion to Dismiss [Doc. # 15] will be granted without further notice or opportunity for hearing.

###

6

14-32432-maw    Doc 27    FILED 03/09/15    ENTERED 03/09/15 11:22:26    Page 6 of 6